FILED
MAY - 7 2025
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| | ) | Case No. 3:25-cr-_77_ |
| v. | ) | |
| | ) | Conspiracy to Commit Mail Fraud |
| | ) | 18 U.S.C. § 1349 |
| CORY ALEXANDER ROBINSON, | ) | (Count 1) |
| (Counts 1-5, 7) | ) | |
| | ) | Mail Fraud |
| and | ) | 18 U.S.C. §§ 1341 & 2 |
| | ) | (Counts 2-4) |
| COKER NICHOLAS ROBINSON, | ) | |
| (Counts 1-4, 6) | ) | Aggravated Identity Theft |
| | ) | 18 U.S.C. §§ 1028A(a)(1) & 2 |
| *Defendants.* | ) | (Counts 5-7) |
| | ) | |
| | ) | Forfeiture Allegation |

### INDICTMENT

May 2025 Term - At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

### Background

1. Unemployment Insurance ("UI") is a joint state-federal program providing temporary financial assistance to workers who become unemployed through no fault of their own. The federal UI trust fund finances the costs of administering unemployment insurance programs, loans made to state unemployment UI funds, and half of extended benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are

1

insufficient. Each state, including the Commonwealth of Virginia, administers a separate UI program, but all states follow the same guidelines established by federal law.

2. In March 2020, the United States was in the midst of the coronavirus ("COVID-19") pandemic, which caused millions of American workers to be out of work. On March 13, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 et seq. ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, signed into law on March 27, 2020, expanded states' ability to provide unemployment insurance for workers impacted by the COVID-19 pandemic. The CARES Act dedicated over $250 billion to increase worker access to unemployment benefits during the public health emergency.

3. The CARES Act expanded UI benefits during the pandemic by: (1) making those benefits available for people who were traditionally ineligible, such as contractors, self-employed, and gig economy workers; and (2) increasing the amount of money paid to people who qualified for unemployment benefits.

4. As of April 18, 2020, the President declared that a major disaster exists in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for wage payments. The President authorized FEMA Administrator to provide grants to

participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to people receiving unemployment insurance.

5.  In Virginia, the Virginia Employment Commission ("VEC") is responsible for administering unemployment compensation programs. Prior to the expanded COVID-19 benefits described below, eligible recipients received a minimum of $158 per week in traditional UI benefits. After the onset of the pandemic, VEC divided the unemployment compensation program into the following four UI benefit components (hereafter, referred to collectively as "UI") based upon the CARES Act and the FEMA LWA funding:

   a. Federal Pandemic Unemployment Compensation Program ("FPUC"): The CARES Act increased benefits for workers collecting UI by $600 per week for claims effective on or about March 29, 2020, through on or about July 31, 2020, thereby increasing the weekly benefit to $758 per week.

   b. Pandemic Unemployment Assistance ("PUA"): The CARES Act expanded unemployment benefits for individuals who did not qualify for traditional UI benefits, including the self-employed, independent contractors, and gig economy workers. The PUA benefit expansion applied to weeks of unemployment beginning on or about January 27, 2020.

   c. Pandemic Emergency Unemployment Compensation ("PEUC"): The CARES Act provided additional unemployment insurance benefits to those who have exhausted state unemployment insurance benefits, which usually lasted for no more than 26 weeks.

   d. Lost Wages Assistance ("LWA"): The FEMA LWA authorization provided an additional $300 per week to claimants in Virginia who were eligible for at least

3

$100 per week in unemployment insurance compensation. For claimants in Virginia, LWA was automatically paid out in one lump sum of $1,800 on or about October 15, 2020, covering the time period between on or about July 25, 2020 (when the $600/week PUA benefits expired), and September 5, 2020, so long as the claimant had certified unemployment eligibility during that time period. LWA funds are federal monies, but the VEC administers the distribution of such funds.

6. Unemployed workers did not file separate claims for PUA, FPUC, and LWA benefits. Rather, an existing approved PUA claim resulted in automatic approval for and payment of FPUC ($600/week) and LWA ($300/week) benefits.

7. Unemployed workers in the Commonwealth of Virginia could file for UI benefits either by phone or through the VEC's online portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer. The VEC application for a UI claim required entry of personal information, including name, date of birth, social security number, physical address, and phone number. The application also required UI claimants to answer a series of questions to verify eligibility, such as work history, name of the last employer, the reason for separation, and a certification that the individual is ready, willing, and able to work. Additionally, to qualify for PUA, UI claimants must have certified that they lost their jobs due to the COVID-19 pandemic.

8. Once the VEC approved a UI claim, the claimant had to re-certify unemployment status on a weekly basis. As part of these recertifications, a UI claimant had to state that he is ready, willing, and able to work each day during the weeks that individual claimed benefits. The claimant was required to attest to representations made within the initial applications and weekly recertifications as truthful under penalty of perjury.

4

9. Successful UI claimants could receive benefits either by VEC direct deposit to a linked bank account provided by the UI claimant, or by a prepaid debit card (called a "Way2Go" card) sent via the United States Postal Service ("USPS") to the physical address listed on the claimant's VEC application. Prepaid debit cards were reloaded with newly disbursed unemployment benefit funds via electronic transfers using the Internet.

10. Under the CARES Act, the VEC approved PUA benefits for workers who normally would not qualify for UI benefits, to include the self-employed, freelancers, and independent contractors. Because such workers typically did not have a wage history for the VEC to verify, the VEC had to rely on and trust the information provided by the claimant as the VEC could not quickly verify the information. In an effort to ensure workers who were unemployed due to the pandemic received their benefits expeditiously, the VEC processed and paid out these claims shortly after the claims were submitted. The VEC did not initially require UI claimants who certified that they had been previously self-employed to provide any documentary evidence in support of the UI claimant's self-employment certification.

11. Incarcerated individuals are not available for employment, nor are they able to seek full time employment. Further, these individuals are unemployed due to their own criminal conduct and not due to COVID-19. For those reasons, incarcerated individuals are not eligible to receive UI benefits, including PUA, LWA, PEUC, and FPUC.

### Defendants

12. Defendant CORY ALEXANDER ROBINSON was a resident of Richmond, Virginia, in the Eastern District of Virginia.

13.     Defendant COKER NICHOLAS ROBINSON was an incarcerated individual at the Augusta Correctional Center, a VADOC facility located in Craigsville, Virginia. COKER NICHOLAS ROBINSON is CORY ALEXANDER ROBINSON's brother.

## COUNT ONE
(Conspiracy to Commit Mail Fraud)

14.     The preceding paragraphs of this Indictment, including all subparagraphs, are incorporated by reference as if fully set forth here.

15.     From at least on or about May 10, 2020, and continuing through at least in or about April 2021, in the Eastern District of Virginia and elsewhere, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON (collectively, "defendants"), knowingly and intentionally combined, conspired, confederated, and agreed with each other and others known and unknown to commit certain offenses against the United States, to wit: *Mail fraud*, that is, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme artifice, and attempting to do so, did knowingly place and caused to be placed in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service; deposit and caused to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier; and, caused to be delivered by mail and such carrier any matter and thing whatever according to the direction thereon, in violation of Title 18, United States Code, Section 1341.

16.     The purpose of the conspiracy was for the defendants and others to steal government-funded UI benefits to which they were not entitled. The purpose of the conspiracy

was also for the defendants and others to conceal their wrongdoing from governmental authorities.

17.  The ways, manner and means by which the defendants sought to accomplish this conspiracy included, but were not limited to, the following:

 a. Generally, COKER NICHOLAS ROBINSON and his co-conspirators obtained the means of identification (*i.e.,* names, dates of birth, and social security numbers) of incarcerated individuals for the purpose of filing fraudulent UI claims. COKER NICHOLAS ROBINSON and his co-conspirators then transferred such means of identification to CORY ALEXANDER ROBINSON. The defendants agreed that CORY ALEXANDER ROBINSON would thereafter use these means of identification to file fraudulent UI claims on behalf of those incarcerated individuals.

 b. For the UI applications to be successful—that is, to induce the VEC to approve the UI applications—CORY ALEXANDER ROBINSON had to provide numerous knowingly false statements in required fields on the VEC website's online application portal. These false statements included CORY ALEXANDER ROBINSON's submission of false physical addresses, telephone numbers, e-mail addresses, and last employers for the purported UI applicants.

 c. CORY ALEXANDER ROBINSON knowingly and falsely certified that the VADOC incarcerated individuals were unemployed due to the COVID-19 pandemic, and that the purported applicants were otherwise ready, willing, and able to work. In truth, as the defendants well knew, the inmates in question were incarcerated and not eligible for UI benefits. In many instances, CORY

      ALEXANDER ROBINSON repeatedly completed knowingly false recertifications for the UI claims on a weekly basis (through at least in or about April 2021) to ensure the VEC would continue to pay fraudulently obtained benefits.

d. CORY ALEXANDER ROBINSON elected for many of the fraudulently obtained UI benefits to be paid through preloaded Way2Go debit cards, which were mailed to the physical addresses listed on the UI applications, which locations were often addresses designated by the defendants.

e. As early as at least May 10, 2020, COKER NICHOLAS ROBINSON and CORY ALEXANDER ROBINSON began discussing the filing of UI claims and weekly recertifications of continued eligibility for benefits on behalf of COKER NICHOLAS ROBINSON and other incarcerated individuals. The defendants often used coded language to discuss these fraudulent claims.

f. On or about May 10, 2020, CORY ALEXANDER ROBINSON used COKER NICHOLAS ROBINSON's means of identification to file for UI benefits with the VEC. The application falsely listed an address in Richmond, Virginia as COKER NICHOLAS ROBINSON's residential address, although in truth—as both defendants well knew—COKER NICHOLAS ROBINSON resided in prison in Craigsville, Virginia. On or about May 10, 2020, CORY ALEXANDER ROBINSON submitted an application for PUA benefits in the name of COKER NICHOLAS ROBINSON that contained knowingly false representations. This application caused the delivery, by mail, of a Way2Go debit card (Mastercard ending in -8883) in the name of COKER NICHOLAS ROBINSON, which was loaded with fraudulently-obtained UI benefits, to an address in Richmond,

      Virginia, within the Eastern District of Virginia. CORY ALEXANDER ROBINSON thereafter filed numerous fraudulent weekly recertifications in the name of COKER NICHOLAS ROBINSON in order to receive continued unemployment benefits, with each recertification containing knowingly false statements about COKER NICHOLAS ROBINSON's continued eligibility to receive funds. In all, the defendants' fraudulent representations to the VEC caused the VEC to disburse unemployment payments to the COKER NICHOLAS ROBINSON Mastercard ending in -8883.

g. On or about May 13, 2020, COKER NICHOLAS ROBINSON inquired about the status of his UI claim in the following recorded conversation:

> COKER NICHOLAS ROBINSON: So what you expecting back on, uh, that paperwork?
> CORY ALEXANDER ROBINSON: Um, what? With yours?
> COKER NICHOLAS ROBINSON: Yeah.
> CORY ALEXANDER ROBINSON: Once the paperwork everything will be in about next week. . . you probably end up with. . .
> COKER NICHOLAS ROBINSON: 55. 56.
> CORY ALEXANDER ROBINSON: Yeah, yeah, it'd be like 56 with [indiscernible]

True to the estimate, on or about May 19, 2020, the VEC loaded an initial amount of $5,622 onto the Way2Go debit card (Mastercard ending in -8883) in COKER ALEXANDER ROBINSON's name.

h. On or about May 14, 2020, in furtherance of the conspiracy, COKER NICHOLAS ROBINSON and CORY ALEXANDER ROBINSON joined a phone call in which they discussed filing fraudulent inmate UI claims. COKER NICHOLAS ROBINSON invited inmate H.S. to join the call. H.S. then provided his name, date of birth, and an address for H.S.'s father in Richmond, Virginia. CORY

9

ALEXANDER ROBINSON agreed to complete the UI claim (seeking unemployment benefits for the ineligible H.S.) by the end of the week. Thereafter, on or about May 15, 2020, CORY ALEXANDER ROBINSON used H.S.'s means of identification to file for UI benefits with the VEC. The same day, CORY ALEXANDER ROBINSON submitted a fraudulent application for PUA benefits in the name of H.S. containing false representations. This application caused the delivery, by mail, of a Way2Go debit card (Mastercard ending in -8041) in the name of H.S., loaded with fraudulently-obtained UI benefits, to an address in Richmond, Virginia, within the Eastern District of Virginia, designated by H.S. CORY ALEXANDER ROBINSON filed numerous fraudulent weekly recertifications in the name of H.S. to receive continued benefits, with each recertification containing knowingly false statements about H.S.'s continued eligibility to receive such unemployment funds. In all, the defendants' fraudulent representations to the VEC caused the VEC to disburse fraudulently obtained benefits to the H.S. Mastercard ending in -8041.

i. On or about May 18, 2020, in furtherance of the conspiracy, COKER NICHOLAS ROBINSON and CORY ALEXANDER ROBINSON joined a phone call in which they discussed filing inmate UI claims. COKER NICHOLAS ROBINSON provided the name, date of birth, and social security number of K.C., an inmate, to file fraudulent UI claims in K.C.'s name. COKER NICHOLAS ROBINSON told CORY ALEXANDER ROBINSON to use CORY ALEXANDER ROBINSON's home address for K.C.'s claim. Thereafter, on or about May 21, 2020, CORY ALEXANDER ROBINSON used K.C.'s means of identification to file for UI

benefits with the VEC. On or about May 21, 2020, CORY ALEXANDER ROBINSON submitted an application for PUA benefits in the name of K.C. containing knowingly false statements. This application caused the delivery, by mail, of a Way2Go debit card (Mastercard ending in -5361) in the name of K.C., loaded with fraudulently-obtained UI benefits, to an address in Richmond, Virginia, within the Eastern District of Virginia. CORY ALEXANDER ROBINSON filed numerous fraudulent weekly recertifications in the name of K.C. in order to receive continued unemployment benefits, with each recertification containing knowingly false statements about K.C.'s continued eligibility to receive funds. In all, the defendants' fraudulent representations to the VEC caused the VEC to disburse funds to the K.C. Mastercard ending in -5361.

j. The defendants took a portion of the fraudulently obtained UI benefits as compensation for filing the fraudulent UI claims in the name of the inmates. The defendants also spent funds from the fraudulently obtained Way2Go debit cards that had been credited with unemployment benefits and issued in the names of the inmate applicants.

    i. As an illustrative example, after receiving the Mastercard ending in -8883 in the name of COKER NICHOLAS ROBINSON, CORY ALEXANDER ROBINSON used the card to both make numerous cash withdrawals at automated teller machines and to transfer funds to his Cash App account.

    ii. For his part, COKER NICHOLAS ROBINSON instructed CORY ALEXANDER ROBINSON to provide COKER NICHOLAS

ROBINSON's portion of the fraud proceeds to other individuals as cash. For instance, on or about May 22, 2020, COKER NICHOLAS ROBINSON told CORY ALEXANDER ROBINSON to "get $500 from that for me." CORY ALEXANDER ROBINSON responded that he "did it yesterday." COKER NICHOLAS ROBINSON then responded, "Alright fo' sho', as long as you did it" and instructed CORY ALEXANDER ROBINSON to put the money in an envelope and give it to INDIVIDUAL 1. (Indeed, the day before, on or about May 21, 2020, CORY ALEXANDER ROBINSON made a $500 cash withdrawal at an automated teller machine in Richmond, Virginia with the COKER NICHOLAS ROBINSON Mastercard ending in -8883.)

18. As a result of the conspiracy, VEC paid UI benefits on behalf of at least thirteen incarcerated individuals who were not entitled to receive such benefits but for whom the defendants had conspired to complete and submit knowingly false UI applications to the VEC.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH FOUR
(Mail Fraud)

19. The preceding paragraphs of this Indictment, including all subparagraphs, are incorporated by reference as if fully set forth here.

20. From at least on or about May 10, 2020, and continuing through at least in or about April 2021, in the Eastern District of Virginia and elsewhere, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON, the defendants, with the intent to defraud, did devise and willfully participate in, with knowledge of its fraudulent nature, a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

21. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting so to do and aiding and abetting the same, the defendants knowingly caused to be delivered by U.S. mail and by private and commercial interstate carrier, according to the direction thereon, the following matters, each such mailing constituting a separate count of this Indictment:

| Count | Defendant | Description of Mailing |
|---|---|---|
| 2 | CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON | On or about May 10, 2020, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON caused fraudulent and false VEC applications for UI and PUA benefits to be filed in the name of COKER NICHOLAS ROBINSON, an incarcerated individual ineligible to receive such benefits. The applications resulted in the mail delivery of a Way2Go debit card (Mastercard ending in -8883) to an address in Richmond, Virginia, within the Eastern District of Virginia. |
| 3 | CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON | On or about May 15, 2020, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON caused fraudulent and false VEC applications for UI and PUA benefits to be filed in the name of H.S., an incarcerated individual ineligible to receive such benefits. The applications resulted in the mail delivery of a Way2Go debit card (Mastercard ending in -8041) to an address in Richmond, Virginia, within the Eastern District of Virginia. |
| 4 | CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON | On or about May 21, 2020, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON caused fraudulent and false VEC applications for UI and PUA benefits to be filed in the name of K.C., an incarcerated individual ineligible to receive such benefits. The applications resulted in the mail delivery of a Way2Go debit card (Mastercard ending in -5361) to an address in Richmond, Virginia, within the Eastern District of Virginia. |

(All in violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNTS FIVE THROUGH SEVEN
(Aggravated Identity Theft)

22. The preceding paragraphs of this Indictment, including all subparagraphs, are incorporated by reference as if fully set forth here.

23. On or about the dates listed below, as described in more detail below, in the Eastern District of Virginia and elsewhere, the defendants did knowingly transfer, possess, and use, without lawful authority, the means of identification of another actual person, during and in relation to the following felony violations enumerated in 18 U.S.C. § 1028A(c), each such use constituting a separate count of this Indictment:

| Count | Defendant | Description | Felony Violation |
|---|---|---|---|
| 5 | CORY ALEXANDER ROBINSON | On or about May 10, 2020, CORY ALEXANDER ROBINSON used and possessed the means of identification of COKER NICHOLAS ROBINSON (*i.e.*, COKER NICHOLAS ROBINSON's actual name, date of birth, and social security number) to file fraudulent UI and PUA applications. | Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349 (Count 1); and Mail Fraud, in violation of 18 U.S.C. §§ 1341 & 2 (Count 2) |
| 6 | COKER NICHOLAS ROBINSON | On or about May 18, 2020, COKER NICHOLAS ROBINSON transferred and possessed the means of identification of inmate K.C. (*i.e.*, K.C.'s actual name, date of birth, and social security number) for the purpose of filing fraudulent UI and PUA applications. | Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349 (Count 1); and Mail Fraud, in violation of 18 U.S.C. §§ 1341 & 2 (Count ~~3~~ 4) *ap* |
| 7 | CORY ALEXANDER ROBINSON | On or about May 21, 2020, CORY ALEXANDER ROBINSON used and possessed the means of identification of inmate K.C. (*i.e.*, K.C.'s actual name, date of birth, and social security number) to file fraudulent UI and PUA applications. | Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349 (Count 1); and Mail Fraud, in violation of 18 U.S.C. §§ 1341 & 2 (Count ~~3~~ 4) *ap* |

(In violation of Title 18, United States Code, Section 1028A(a)(1) and 2.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants, CORY ALEXANDER ROBINSON and COKER NICHOLAS ROBINSON, are hereby notified that, if convicted of any of the offenses alleged in Counts One through Four of the Indictment, they shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense. If property subject to forfeiture meets the requirements of 21 U.S.C. § 853(p), the government will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c) and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____
FOREPERSON

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By: _____
Avi Panth
Assistant United States Attorney

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office